MYERS, APPELLEE, *v.* CITY OF TOLEDO; MABE, ADMR.,
BUREAU OF WORKERS' COMPENSATION, APPELLANT.

[Cite as *Myers v. Toledo,* 110 Ohio St.3d 218, 2006-Ohio-4353.]

(Nos. 2005–1355 and 2005–1473—Submitted April
11, 2006—Decided September 6, 2006.)

**MOYER, C.J.**

{¶ 1} This appeal requires us to answer the following question certified to us as a conflict: "Is a ruling which grants a Civ.R. 35(A) motion for a physical or mental examination made in a special proceeding such as a divorce case or worker's [sic] compensation case, a final appealable order under either R.C. 2505.02(B)(2) or R.C. 2505.02(B)(4)?" We answer the question in the negative. An order granting a physical or medical examination, made in a special proceeding, is not a final, appealable order.

I

{¶ 2} Appellee, Kenneth Myers, was an employee of the city of Toledo, working as a recyclables and garbage collector. He was injured on December 16, 1999, when a garbage truck drove over his right foot. He sustained multiple injuries to this foot, and ultimately the large toe on his right foot was amputated.

{¶ 3} Myers's claim for benefits was granted by the Bureau of Workers' Compensation. However, Myers continued to suffer pain and discomfort and

filed an amended claim for posttraumatic causalgia.[1]  In January 2003, at the direction of the bureau, Myers was seen by Carlos de Carvalho, M.D.  In his report, Dr. de Carvalho opined that Myers suffered from some posttraumatic causalgia of his right lower extremity that had not yet reached the point of maximum medical improvement.  Initially, the bureau allowed the amended claim, but a staff hearing officer for the Industrial Commission later vacated the order and denied the claim.  After an unsuccessful administrative appeal, Myers filed an appeal in common pleas court.

{¶ 4} Myers submitted a proposed expert witness list of five physicians, including Dr. de Carvalho.  The bureau scheduled an appointment for Myers to undergo an independent medical examination ("IME") with a physician of the bureau's choosing.  When Myers refused to attend, the bureau moved to compel his attendance, claiming that it needed an additional examination to effectively rebut the testimony of Myers's experts.  Myers opposed the motion, arguing that the bureau had failed to show good cause for its request, as he had already submitted to an examination by a doctor selected by the bureau.  Myers argued that the bureau was "doctor-shopping," that is, looking for a physician who would write a report favorable to the bureau.

{¶ 5} The trial court overruled Myers's objection and granted the bureau's motion to compel.  Myers appealed, and the court of appeals reversed, holding that an order granting an IME was a final, appealable order under R.C. 2505.02(B)(2).  The court of appeals also held that the bureau failed to show good cause for requesting the examination, as required by Civ.R. 35(A).  The court of appeals recognized a conflict among the appellate districts and certified the question to this court.  We determined that a conflict existed, 106 Ohio St.3d 1542, 2005-Ohio-5343, 835 N.E.2d 725, and also accepted a discretionary appeal by the bureau, 106 Ohio St.3d 1544, 2005-Ohio-5343, 835 N.E.2d 726.

II

{¶ 6} A final, appealable order is defined by R.C 2505.02(B).  "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 7} " * * *

{¶ 8} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

---

1.  "Causalgia" is a "[p]ersistent severe burning sensation, usually following partial injury of a peripheral nerve * * *."  Stedman's Medical Dictionary (26th Ed.1995) 294.

{¶ 9} "* * *

{¶ 10} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:

{¶ 11} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

{¶ 12} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." [2]

{¶ 13} The bureau argues that an order for an independent medical examination issued pursuant to Civ.R. 35(A) is not a final, appealable order under R.C. 2505.02(B).

{¶ 14} R.C. 2505.02(B)(2) defines an order as final if it is made in a special proceeding and it affects a substantial right. A special proceeding is defined as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2).

{¶ 15} Workers' compensation did not exist at common law or in equity, but was established by special legislation. See S.B. No. 127, 102 Ohio Laws 524; Am.S.B. No. 48, 103 Ohio Laws 72. See, generally, Fulton, Ohio Workers' Compensation Law (2d Ed.1998) 20–21, Sections 2.10–2.11. Therefore it falls within the definition of a special proceeding under R.C. 2505.02(A)(2).

{¶ 16} Having determined that a workers' compensation proceeding is a special proceeding as defined in R.C. 2505.02(A)(2), we now must determine whether the order requiring Myers to submit to an independent medical examination affected a substantial right.

## III

{¶ 17} A substantial right is defined in R.C. 2505.02(A)(1) as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).

{¶ 18} Ohio's Civ.R. 35 closely tracks the language of Fed.R.Civ.P. 35, its federal counterpart. Therefore, federal case law that interprets the federal rule, while not controlling, is persuasive. *First Bank of Marietta v. Mascrete, Inc.* (1997), 79 Ohio St.3d 503, 508, 684 N.E.2d 38 ("Though federal law is not

---

2. This version of the statute was passed in 1998. 1998 H.B. 394, 147 Ohio Laws, Part II, 3277. Subsequent amendments are mostly technical and do not affect the cited sections.

controlling with regard to interpretation of the Ohio Rules of Civil Procedure, it can be instructive where, as here, the rules are similar").

{¶ 19} At least one court has noted that "[p]rior to the adoption of the Federal Rules of Civil Procedure * * * the common law viewed court-ordered medical examinations as repugnant to a person's privacy and bodily integrity. Indeed, in *Union Pacific Ry. Co v. Botsford,* 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), the Court held that '[t]he inviolability of the person is as much invaded by a compulsory stripping and exposure [by the examining doctor], as by a blow.' Id. at 251–52, 11 S.Ct. at 1001 [35 L.Ed. 734]." *Metro. Property & Cas. Ins. Co. v. Overstreet* (Ky.2003) 103 S.W.3d 31, 34. However, "the immunity that was recognized in the *Botsford* case has no constitutional sanction. It is amenable to statutory change." *Sibbach v. Wilson & Co.* (1941), 312 U.S. 1, 17, 61 S.Ct. 422, 85 L.Ed. 479 (Frankfurter, J., dissenting). The right to be free from an unwanted medical examination is found in the common law, not in the federal Constitution. And like other common-law privileges it is subject to statutory change. Id. at 11–12, 61 S.Ct. 422, 85 L.Ed. 479.

{¶ 20} In Ohio, however, it appears that court-ordered examinations were permitted at common law. "In an action to recover for personal injuries, caused by the negligence of the defendant, the court has the power to require the plaintiff to submit his person to an examination by physicians and surgeons, when necessary to ascertain the nature and extent of the injury." *Miami & Montgomery Turnpike Co. v. Baily* (1881), 37 Ohio St. 104, paragraph one of the syllabus. *S.S. Kresge Co. v. Trester* (1931), 123 Ohio St. 383, 175 N.E. 611, paragraph one of the syllabus. At least between plaintiff and defendant there does not appear to be a common-law right against medical examination, and even if there was a common-law right it has been abrogated by rule.

{¶ 21} In *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, the Supreme Court heard a challenge to Fed.R.Civ.P. 35 and the authority of Congress to abrogate a common-law right. The court noted that the right to be free from a physical examination was a common-law protection and that Congress was well within its authority to alter the rule. Id. at 12, 61 S.Ct. 422, 85 L.Ed. 479 ("the matter is one of procedure"). Fed.R.Civ.P. 35 clearly allows for a court-ordered medical examination of parties; there is no constitutional, statutory, or common-law right that prevents the order. *Schlagenhauf v. Holder* (1964), 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152.

{¶ 22} A party to a cause of action in which the physical condition of the party is in controversy does not have a substantial right to prevent a court from ordering a physical examination. Therefore, a court order requiring a party to submit to an independent medical examination, for good cause shown, does not

affect a substantial right and is not a final, appealable order under R.C. 2505.02(B)(2).

## IV

{¶ 23} The second branch of the certified question asks whether the order requiring Myers to attend the IME was final under R.C. 2505.02(B)(4). An order is final if it satisfies the three-part test set forth in subsection (B)(4); the first part requires that the order be a provisional remedy. See *State v. Muncie* (2001), 91 Ohio St.3d 440, 447, 746 N.E.2d 1092.

{¶ 24} Prior to the addition of this subsection in 1998, Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277, the statute was silent regarding provisional remedies. Under the former statute, we held that "[d]iscovery orders are interlocutory and, as such, are neither final nor appealable." *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph seven of the syllabus. The amended statute added the provisional-remedy section and defined "provisional remedy" as "a proceeding ancillary to an action, including, but not limited to, * * * discovery of a privileged matter." R.C. 2505.02(A)(3). If the order in question affects the discovery of a privileged matter it is by definition a provisional remedy and meets the first step of the test. The canon expressio unius est exclusio alterius tells us that the express inclusion of one thing implies the exclusion of the other. Black's Law Dictionary (8th Ed.2004) 620. The General Assembly stopped short of including all discovery orders in the provisional-remedy section.

{¶ 25} The request for a physical examination under Civ.R. 35(A) is a discovery order that is not a provisional remedy and is not a final, appealable order under R.C. 2505.02(B)(4).

## V

{¶ 26} We answer the certified question in the negative and hold that a trial court order granting a Civ.R. 35(A) motion for a physical or medical examination, made in a special proceeding, is not a final, appealable order under R.C. 2505.02(B)(2) or (4). This is consistent with our earlier decision that a Civ.R. 35(A) motion outside of a special proceeding was not a final, appealable order. *Nickel v. Carter*, 104 Ohio St.3d 542, 2004-Ohio-6776, 820 N.E.2d 895, ¶ 15.

{¶ 27} The judgment of the court of appeals is reversed; the judgment of the trial court is reinstated.

Judgment reversed.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and HENDON, JJ., concur.

SYLVIA SIEVE HENDON, J., of the First Appellate District, sitting for LANZINGER, J.

---

Spitler & Williams–Young Co., L.P.A., Mark G. Williams–Young, and Kevin J. Cooper, for appellee.

Jim Petro, Attorney General, and Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, and Peggy Corn and Elise Porter, Assistant State Solicitors, for appellant.