OPINION
{¶ 1} Appellant David C. Randolph appeals from a trial court order denying his motion to quash and granting a motion to compel filed by plaintiff-appellee Irene Fredericks. Randolph contends that the trial court abused its discretion by granting the motion to compel and denying the motion to quash.
 {¶ 2} We conclude that we lack jurisdiction over this matter because the order granting the motion to compel and denying the motion to quash is interlocutory. The order is not appealable under R.C. 2505.02(B)(2), because it does not affect a substantial right, such as a claim of privilege, for example. While issuance of a subpoena has been considered a provisional remedy under R.C. 2505.02(B)(4) in some cases, the non-party witness in this case who is appealing has not been asked to provide privileged information and has an adequate remedy by way of appeal after final judgment in the case. Accordingly, the appeal is dismissed for lack of a final appealable order.
 I {¶ 3} In November 2006, Good Samaritan Hospital (GSH) filed a notice of appeal in the trial court for the purpose of appealing the decision of an Industrial Commission Staff Hearing Officer. The appeal listed Fredericks as the plaintiff and GSH and the Administrator of the Bureau of Workers' Compensation as defendants.
 {¶ 4} Subsequently, Fredericks filed a complaint alleging that she had sustained injury during the course of her employment with GSH. According to the complaint, the Bureau of Workers' Compensation had originally recognized Fredericks's claim for the condition of "sprain lumbar region." Fredericks asked the Bureau to recognize *Page 3 
additional conditions of "aggravation of pre-existing L4-5 disc desiccation and spondylolisthesis," but a District Hearing Officer denied the additional claims. Fredericks appealed, and a Staff Hearing Officer then vacated the District Hearing Officer's decision. The Staff Hearing Officer found that the additional conditions were causally connected to Fredericks's industrial injury. Accordingly, Fredericks asked the trial court to enter judgment in her favor and allow the additional participation in the Workers' Compensation Fund.
 {¶ 5} In April 2007, GSH disclosed Dr. David Randolph as an expert. Fredericks and GSH subsequently stipulated that Fredericks would appear for a physical examination to be conducted by Randolph on October 10, 2007. Fredericks served Randolph with a subpoena shortly thereafter, asking Randolph to provide documentation and information about his expert medical-legal examinations for the past five years. In lieu of providing the actual documents, the subpoena indicated that Randolph could provide an affidavit outlining, for example: (1) the persons by whom he had been hired; (2) the amount of income he had derived from consultations, examinations, reports, and testimony; and (3) the number of independent examinations, medical-legal reviews, depositions, reports and/or trial testimony he had done during the past five years. The subpoena also requested any documents setting out the fee agreement between Randolph and the entity hiring him, including any fee schedule for independent medical examinations.
 {¶ 6} GSH responded to the motion to compel, even though it did not represent Randolph. In addition, Randolph moved, as a nonparty, to quash the above requests for information on the grounds of privilege, relevance, privacy, and undue burden under *Page 4 
Civ. R. 45(C)(3). In an affidavit, Randolph stated that he did not segregate data in a manner that would let him locate and produce records pertaining to money or income made to conduct independent medical examinations or to testify at trial. Randolph also stated that while his medical reports are computer-generated and in accordance with HIPPA and other federal and state regulations, he could not run a computerized search of his records and sort them by the type of treatment or services provided. He further indicated that he did not distinguish on his billing records between examinations performed for direct care and those performed to answer diagnostic or treatment-related questions.
 {¶ 7} Randolph's affidavit also indicated that many of his bills did not require "ICD-9" codes, as they are simply diagnostic codes reflecting a medical diagnosis and do not indicate the type of treatment rendered. According to Randolph, even if he could sort his records by what he referred to as "CPT" codes, the codes would not indicate the purpose for which a service had been rendered. Randolph also stated that many of the records covered by the subpoena requests were stored off-site and he would have to pay costly retrieval fees, which would "completely shut down" his medical practice. Randolph did not provide any specifics or documentation about the number of records involved, the cost of retrieving the records, or how his practice would be impacted.
 {¶ 8} The trial court issued a decision in November 2007, overruling the motion to quash and granting the motion to compel. The court concluded that the information being sought was relevant on the issue of Randolph's bias or prejudice. Randolph appeals from the trial court's decision. *Page 5 
 II {¶ 9} Randolph's sole assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION IN GRANTING PLAINTIFF'S MOTION TO COMPEL AND DENYING DEFENDANT'S MOTION TO QUASH IN ITS ENTRY OF NOVEMBER 5, 2007."
A. Jurisdiction Generally
 {¶ 11} As a preliminary matter, we note that Fredericks has raised the issue of whether we have jurisdiction over this interlocutory appeal, due to the lack of a final appealable order. We will consider this issue first, since jurisdiction cannot be waived, nor can it be bestowed on the court. State ex rel. White v. Cuyahoga Metro. Hous. Auth.,79 Ohio St.3d 543, 544, 1997-Ohio-366, 684 N.E.2d 72.
 {¶ 12} In responding to the jurisdictional argument, Randolph contends that decisions on subpoenas issued to non-parties are final appealable orders because non-parties lack a meaningful remedy after final judgment, like the one afforded to parties to the actions. GSH also offers arguments in support of jurisdiction, even though it is technically classified as an appellee. GSH contends that jurisdiction exists under either R.C. 2505.02(B)(2) or (4).
 {¶ 13} R.C. 2505.02(B) provides, in pertinent part, that:
 {¶ 14} "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 15} ". . .
 {¶ 16} "(2) An order that affects a substantial right made in a special proceeding . . .; *Page 6 
 {¶ 17} ". . .
 {¶ 18} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:
 {¶ 19} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 {¶ 20} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."
Jurisdiction under R.C. 2505.02(B)(2)
 {¶ 21} We will first address the argument that the trial court order affects a substantial right made in a special proceeding. The underlying case involves workers' compensation, which has been classified as a "special proceeding." Myers v. Toledo, 110 Ohio St.3d 218, 220,2006-Ohio-4353, 852 N.E.2d 1176, at ¶ 15-16. The remaining issue is whether the discovery order affects a substantial right. A "substantial right" is statutorily defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).
 {¶ 22} GSH argues that Randolph's substantial rights have been affected because he has a right created by a "rule of procedure" — Civ. R. 45. According to GSH, Civ. R. 45(C) provides Randolph with a "right" not to be burdened with expense resulting *Page 7 
from the demanded production of information. We disagree. If the Ohio Civil Rules of Procedure created such rights, the Ohio Supreme Court would have found that a substantial right existed in Myers.
 {¶ 23} The plaintiff in Myers appealed from an order compelling him to submit to a physical examination under Civ. R. 35(A). 2006-Ohio-4353, at ¶ 4. Much like Civ. R. 45(C), Civ. R. 35(A) affords protection against intrusive discovery by requiring that "good cause" be shown before an order will be granted requiring an individual to submit to a physical examination. Despite this fact, the Ohio Supreme Court concluded inMyers that the plaintiff did not have a substantial right to prevent the court from ordering a physical examination. Id. at ¶ 22. Accordingly, there is no basis for concluding that the Rules of Civil Procedure create "substantial rights." Any such right must be derived from another source.
 {¶ 24} Randolph also argues that he has a substantial right, under Civ. R. 45(C)(5) to be reasonably compensated for the work he will necessarily perform in responding to the subpoena. We note that Randolph has yet to apply to the trial court for compensation, so any appeal based on this issue is premature — the trial court has made no ruling with respect to the issue of Randolph's compensation under the Rule. Even if it had entered an order overruling Randolph's application for compensation, that would not be an order "that affects a substantial right made in a special proceeding" because the lack of immediate appealability would not foreclose meaningful relief in an appeal after judgment, so that the right to compensation would still exist, and could be vindicated in an appeal after judgment. Toronto Dominion Bank v. SamiFaez Muhtadie, Greene App. No. 05-CA-51, 2006-Ohio-268, ¶ 10; citingBell v. Mt. Sinai Med. Ctr. *Page 8 
(1993), 67 Ohio St.3d 60, 63.
 {¶ 25} The alternate source GSH offers in this case is R.C. 2317.02. According to GSH, Randolph has a substantial right under R.C. 2317.02 to protect medical records of other parties from disclosure.
 {¶ 26} R.C. 2317.02(B)(1) prohibits physicians from testifying about communications made to them by patients, with certain exceptions that are not presently relevant. We have previously held that this privilege against disclosure is a substantial right affected by a trial's order of disclosure. Grant v. Collier (Feb. 17, 1992), Montgomery App. No. 12670,1992 WL 28161, * 2. However, R.C. 2317.02 does not provide a basis for a final appealable order in this case because the trial court did not order the disclosure of privileged information.
 {¶ 27} The trial court ordered Randolph to comply with the subpoena, which requested four items of information. The part of the subpoena that was challenged involves only the first and second requests. Request Number One asked for documents or records reflecting Randolph's income from expert medical-legal examinations in the last five years. However, Randolph was also permitted to submit an affidavit instead of providing the documents. The affidavit only needed to identify the entities who had hired Randolph, the amount of income he had derived, and the number of examinations, medical-legal reviews, depositions, reports, and/or trial testimony he had provided in the last five years. If in any instance, Randolph was hired by a patient to conduct an expert medical-legal examination, Fredericks acknowledged at the oral argument of this appeal that Randolph could satisfy the subpoena by indicating, in his affidavit, the identity of the entity who hired him in that instance as "patient," without identifying the particular *Page 9 
patient, and we construe the subpoena accordingly. Randolph could comply with this request without testifying about privileged communications with patients and without providing information that would reveal the identities of patients.
 {¶ 28} Request Number Two in the subpoena asks for "any documents setting forth the terms of the compensation agreement between you and the individuals or entity that hire [sic] you, including any fee schedule for medical examination services." Again, this is not a request for privileged communications with patients. This part of the subpoena is directed to agreements between Randolph and the persons hiring him to perform expert evaluations. Accordingly, the privilege in R.C. 2317.02
does not apply and no substantial right has been affected.
Jurisdiction under R.C. 2505.02(B)(4)
 {¶ 29} The second claimed basis for a final appealable order is R.C. 2505.02(B)(4), which allows appeal of provisional remedies in certain situations. R.C. 2505.02(A)(3) defines a provisional remedy as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, [or] suppression of evidence * * * ." An ancillary proceeding is "one that is attendant upon or aids another proceeding."Bishop v. Dresser Industries, Inc. (1999), 134 Ohio App.3d 321, 324,730 N.E.2d 1079 (citation omitted).
 {¶ 30} A number of districts have concluded that issuance of subpoenas involves a provisional remedy. See, e.g., Future Communications, Inc. v.Hightower, Franklin App. No. 01AP-1175, 2002-Ohio-2245, at ¶ 11-12. However, even if a provisional *Page 10 
remedy is involved, that does not mean that a final appealable order exists. The remaining criteria in R.C. 2505.02(B)(4) must still be satisfied.
 {¶ 31} Randolph argues that he would not have a meaningful remedy after appeal because the information would have been disclosed and the "bell cannot be unrung." However, the same argument could be made in any discovery situation. Whenever litigants are asked to provide information, and do so over objection, the fact of disclosure would not be remedied even after a successful appeal. Disputes over the scope and extent of discovery occur in most civil cases, but the legislature has chosen for good reason to restrict immediate appeal to situations involving matters like disclosure of privileged material or trade secrets. The harm in these situations occurs due to the dissemination of the information itself, which cannot be remedied absent an immediate appeal.
 {¶ 32} The Tenth District Court of Appeals addressed this point inDispatch Printing Co. v. Recovery Ltd. Partnership, 166 Ohio App.3d 118,2006-Ohio-1347, 849 N.E.2d 297, by noting that:
 {¶ 33} "On its face, R.C. 2505.02(A)(3) is flexible and able to address situations where a party has a protectable interest at stake and yet has no meaningful ability to appeal the decision which discloses that interest to others. If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal. The proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage. In a competitive commercial market where customers are a business'[s] most valuable asset and technology changes daily, disclosure of a trade secret will surely cause irreparable *Page 11 
harm." 2006-Ohio-1347, 849 N.E.2d 297, 300, at ¶ 8.
 {¶ 34} The Ohio Supreme Court made a similar point in Myers by noting that:
 {¶ 35} "If the order in question affects the discovery of a privileged matter it is by definition a provisional remedy and meets the first step of the test. The canon expressio unius est exclusio alterius tells us that the express inclusion of one thing implies the exclusion of the other. Black's Law Dictionary (8th Ed. 2004) 620. The General Assembly stopped short of including all discovery orders in the provisional-remedy section.
 {¶ 36} "The request for a physical examination under Civ. R. 35(A) is a discovery order that is not a provisional remedy and is not a final, appealable order under R.C. 2505.02(B)(4)." 2006-Ohio-4353, at ¶ 24-25."
 {¶ 37} Again, one could argue that once a physical examination occurs, the disclosure has taken place and the effect cannot be remedied by a later finding on appeal that the examination should not have been ordered. However, this situation differs from one involving trade secrets or privileged information. The sanction that could be applied upon appeal for improper disclosure is that the results of the examination could not be used when the case is retried. Similarly, GSH could appeal an adverse judgment and claim that the trial court should have quashed discovery about Randolph's expert consultations and fees. If that argument is accepted on appeal, the remedy would be to reverse the judgment and prohibit Fredericks from presenting the evidence on retrial.
 {¶ 38} In arguing that Randolph would not have an adequate remedy following disclosure, GSH relies on a number of cases, includingWozniak v. Kombrink (Feb. 13, *Page 12 
1991), Hamilton App. No. C-89053, 1991 WL 17213. In Wozniak, the First District Court of Appeals found that a trial court order denying a nonparty's motion to quash was a final appealable order because there would be no effective remedy after the information had been disclosed. GSH argues that the same situation is present here. Again, we disagree. In Wozniak, the First District observed that:
 {¶ 39} "[T]he contested information contains the medical histories of nonparty patients confided to a physician in the context of obtaining independent medical examinations and second opinions for purposes unrelated to the litigation below. The identities of those nonparty witnesses may be discernable even if their names are deleted from the records. The trial court's order does not explicitly define what must be done to protect those identities. We hold that the rights of privacy and confidentiality are sufficiently implicated in this case to satisfy the substantial-rights test." 1991 WL 17213, * 3.
 {¶ 40} The present case does not involve the same type of situation. Fredericks did not request medical histories or other information from which the identities of nonparty patients could be ascertained, and the trial court did not order disclosure of that information. Consequently, cases that focus on the privileged nature of information do not apply. Because the information requested in this case is not privileged, Randolph is in the same position as any other individual who is presented with discovery requests that he or she finds objectionable. See, e.g., Holliday v. Gerth, Cuyahoga App. No. 86570, 2006-Ohio-934, at ¶ 7 (finding no appealable order because privileged information was not being disclosed).
 {¶ 41} A more pertinent consideration in terms of adequacy of the remedy is *Page 13 
whether Randolph would be able to appeal the discovery order after final judgment. However, we see no reason why Randolph would not have the ability to appeal.
 {¶ 42} Randolph contended in the trial court that complying with the subpoena would cause significant burden and expense.[1] If complying with the subpoena does cause significant substantiated undue burden and expense, Randolph can apply to the court for sanctions under Civ. R. 45(E). This section of the Rule states that a "court from which a subpoena was issued may impose upon a party or attorney in breach of the duty imposed by division (C)(1) of this rule an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fees." The specific duty imposed by Civ. R. 45(C)(1) is that parties or attorneys issuing and serving subpoenas must "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."
 {¶ 43} Also, Civ. R. 45(C)(5) addresses the duty to compensate a witness under an unduly burdensome subpoena.
 {¶ 44} In Capitol Mortgage Services, Inc. v. Hummel (Feb. 22, 2001), Franklin App. No. 00AP-734, 2001 WL 170594, an attorney for two defendants subpoenaed nonparty witnesses for a hearing. However, the trial court granted motions to quash filed by the non-parties. One of the non-parties then filed a motion with the trial court asking for reimbursement of expenses associated with the subpoena, but the case was dismissed by the parties before the trial court ruled on the request for expenses. Id. at * 2. *Page 14 
 {¶ 45} A magistrate subsequently held a hearing and concluded that the attorney who had filed the subpoenas should pay expenses. The trial court adopted the magistrate's decision, and the attorney and his client appealed. On appeal, the Tenth District Court of Appeals reversed and remanded the matter for further proceedings, because the attorney had not been properly served with the magistrate's decision. Id. at *3.
 {¶ 46} After the case was remanded, the attorney and client filed a petition for a writ of prohibition and writ of mandamus to prevent the trial court from proceeding with the matter. The Tenth District Court of Appeals dismissed the complaint, concluding that an adequate remedy existed at law. The Ohio Supreme Court then affirmed. See State ex rel.Hummel v. Sadler, 96 Ohio St.3d 84, 86, 2002-Ohio-3605, 771 N.E.2d 853, at ¶ 14 and 32. The Supreme Court held that the nonparty's request for sanctions was similar to other issues that are collateral to the merits of an action and could be heard despite the dismissal of the underlying action. Id. at ¶ 23-25. Consequently, the Ohio Supreme Court concluded that the trial judge did not patently and unambiguously lack jurisdiction, and that the nonparty had an adequate remedy by way of appeal. Id. at ¶ 25-26.
 {¶ 47} During the time that the prohibition and mandamus proceedings were pending, the trial court reviewed the earlier magistrate's decision and determined that the nonparty attorney should pay $4,168.18. The Tenth District Court of Appeals affirmed, finding first that the trial court did not abuse its discretion in granting the motion to quash. SeeCapitol Mortg. Services, Inc. v. Hummel, Franklin App. No. 01AP-1104, 2002-Ohio-4301, at ¶ 50-59. The Tenth District also stated that: *Page 15 
 {¶ 48} "Civ. R. 45(C)(1) imposes a duty upon attorneys to avoid imposing undue burden or expense on a person subject to a subpoena issued pursuant to the rule. The rule allows the court to impose sanctions upon an attorney or a party who breaches that duty. Imposition of such a sanction is a collateral matter, not a judgment on the merits of the action. Thus, a voluntary dismissal does not require the court to turn a blind eye to abuse of the adjudicatory process. Accordingly, the trial court retained jurisdiction for the limited purpose of considering the motion for sanctions, as any other result would permit a party to voluntarily dismiss an action to evade an award of sanctions under Civ. R. 45." 2002-Ohio-4301, at ¶ 65.
 {¶ 49} The point of the above discussion is that a nonparty subjected to an award of expenses under Civ. R. 45(E) can appeal, and, therefore, possesses an adequate remedy at law. As was noted, the nonparty inCapitol Mortg. Services was also able to obtain appellate review of the trial court's original decision to quash his subpoenas. Applying the same reasoning to the present situation, non-parties who contest subpoenas could likewise appeal and would have an adequate remedy if they failed to prevail in the trial court. Notably, appellate review of trial court orders is almost always available, except in a few very rare situations, like denial of judicial release. See, e.g, State v.Greene, Greene App. No. 02-CA-17, 2002-Ohio-2595 (noting that the legislature has not allowed for appellate review of trial court decisions denying judicial release).
 {¶ 50} Based on the above analysis, Randolph has an adequate remedy by way of appeal after final judgment. Furthermore, since the trial court's discovery order is interlocutory, Randolph will not be prevented from asking the court to consider expenses under Civ. R. 45(E). An award could potentially be granted if Randolph substantiates *Page 16 
that he has actually been subjected to undue burden and expense. See,e.g., Stuck v. Coulter, Darke App. No. 1707, 2008-Ohio-485, at ¶ 22
("trial court `retains jurisdiction to reconsider its interlocutory orders, either sua sponte or upon motion, any time before it enters final judgment in the case'").
 {¶ 51} Randolph and GSH have failed to persuade the court that a final appealable order exists under either R.C. 2505.02(B)(2) or (B)(4). Accordingly, this appeal will be dismissed for lack of jurisdiction. In light of this disposition, Randolph's assignment of error is moot.
 III {¶ 52} Because we conclude that there is no final, appealable order upon which to predicate appellate jurisdiction, Randolph's appeal is Dismissed.
BROGAN and WALTERS, JJ., concur.
(Hon. Sumner E. Walters, retired from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Randolph did not provide the trial court with any documentation or details that would support this statement. *Page 1