[Cite as *Noe v. Housel*, 2020-Ohio-1537.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Janelle Noe, et al.                                    Court of Appeals No. L-18-1267

      Appellants                                    Trial Court No. CI0201701593

v.

Christopher Housel, et al.                       **DECISION AND JUDGMENT**

      Appellees                                    Decided:  April 17, 2020

* * * * *

Marvin A. Robon and R. Ethan Davis, for appellants.

Mark J. Seitzinger and Jessica Dillon Compton, for appellee
Thomas Leis.

Andrew J. Ayers and Robert J. Bahret, for appellees John Talbot
and Clinton Caddell.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas which granted appellees' motion for summary judgment.  For the reasons set forth

below, this court affirms the judgment of the trial court.

{¶ 2} On February 14, 2017, as amended on January 22, 2018, by leave of the trial court, plaintiffs-appellants Janelle Noe, Christopher Noe, and Mindy (aka Melinda) Noe filed a complaint with jury demand against defendants-appellees Clinton Caddell, John Talbot, and Thomas Leis and defendants-nonappellees Christopher Housel, Max Pro, Inc., and John Doe Nos. 1 through 3, setting forth claims of negligence by Housel (Count 1), social host liability by Caddell, Talbot and John Doe Nos. 1 through 3 (Count 2), negligence by Leis (Count 3), dram shop liability by Max Pro, Inc. (Count 4), a claim for market value of home healthcare services by Christopher and Mindy Noe (Count 5), and filial loss of consortium by Christopher and Mindy Noe (Count 6). Appellants alleged Janelle Noe (hereafter, "Noe") attended a party hosted by Housel, Caddell, Talbot and John Doe Nos. 1 through 3 on January 15, 2016, at their home in Toledo, Lucas County, Ohio. The hosts rented from their landlord, Leis. While at the party, appellants alleged an intoxicated, underage Housel ignited "the high proof alcohol he was drinking," threw the ignited fluid onto Noe, and set her clothes on fire. Appellants alleged Noe suffered permanent physical injuries and her parents incurred related damages. Appellees generally denied the allegations and asserted various affirmative defenses. Housel cross-claimed for indemnity and contribution from Caddell, Talbot and Leis, and the cross-claim defendants generally denied Housel's cross-claims. Discovery among the parties ensued.

{¶ 3} Talbot and Caddell filed a joint motion for summary judgment on May 17, 2017, which appellants opposed. On January 8, 2018, the trial court granted the motion

2.

and dismissed appellants' claims against Talbot and Caddell. Then Leis filed a motion for summary judgment on January 19, 2018, which appellants opposed. On April 4, 2018, the trial court granted the motion and dismissed appellants' claims against Leis. On October 18, 2018, appellants dismissed with prejudice Max Pro, Inc. from all of their claims.

{¶ 4} On October 26, 2018, appellants appealed the trial court's January 8 and April 4, 2018 determinations on summary judgment, and this court dismissed their appeal for lack of a Civ.R. 54(B) final order because appellants' claims against Housel and Housel's cross-claims against Caddell, Talbot and Leis remained pending. *Noe v. Housel*, 6th Dist. Lucas No. L-18-1230 (Nov. 15, 2018). Upon remand, appellants dismissed with prejudice Housel from all of their claims, and Housel dismissed with prejudice all of his cross-claims against Caddell, Talbot and Leis.

{¶ 5} Appellants filed their amended notice of appeal setting forth three assignments of error.

> I. The trial court erred in granting summary judgment to Appellee Thomas Leis, when he had actual and/or constructive knowledge that underage drinking was routinely taking place at the Dorchester residence.

> II. The trial court erred in finding that R.C. 4301.69(B) does not apply to co-tenants, and granting summary judgment to Appellees Talbot and Caddell.

3.

III. Appellees Talbot and Caddell were negligent as "social hosts" by knowingly allowing the underage and drunken Christopher Housel to play with fire and high proof liquor.

{¶ 6} Then on November 8, 2019, appellants dismissed with prejudice Leis from all of their claims, and the trial court ordered his dismissal.[1] Consequently, appellants' first assignment of error is moot. App.R. 12(A)(1)(c). Hereafter, "appellees" shall refer to Talbot and Caddell.

## I. Standard of Review

{¶ 7} Appellate review of trial court summary judgment determinations is de novo, employing the same Civ.R. 56 standard as trial courts. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

{¶ 8} Summary judgment may be granted only:

if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the

---

[1] While appellants dismissed their claims against appellee Leis on November 8, 2019 in the trial court, the parties filed a stipulation of dismissal with this court on October 29, 2019. Pursuant to App.R. 27, and the parties' stipulation, the court enters a dismissal of this appeal as it relates to appellee Leis.

4.

evidence or stipulation, and only from the evidence or stipulation, that

reasonable minds can come to but one conclusion and that conclusion is

adverse to the party against whom the motion for summary judgment is

made, that party being entitled to have the evidence or stipulation construed

most strongly in the party's favor.

Civ.R. 56(C).

{¶ 9} When seeking summary judgment, the moving party must identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact regarding an essential element of the non-movant's case and not rely on conclusory assertions the non-movant has no evidence to prove its case. *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id.* at 293. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, 93 N.E.3d 329, ¶ 14 (6th Dist.).

## II. No R.C. 4301.69(B) Civil Liability

{¶ 10} In support of their second assignment of error, appellants argue appellees have "social host liability" pursuant to R.C. 4301.69(B). Appellants argue under R.C. 4301.69(B) appellees are civilly liable to appellants "as they were 'occupants' of a

5.

'private place' who 'knowingly' allowed the underage Housel to 'remain in or on the place while possessing or consuming beer or intoxicating liquor * * *.'" Appellants argue appellees' duty to Noe was not about removing Housel from the residence, but was about not "'allowing' the underage consumption of alcohol on the leased property."

{¶ 11} R.C. 4301.69(B) does not use the phrase "social host," stating in its entirety:

No person who is the owner or occupant of any public or private place shall knowingly allow any underage person to remain in or on the place while possessing or consuming beer or intoxicating liquor, unless the intoxicating liquor or beer is given to the person possessing or consuming it by that person's parent, spouse who is not an underage person, or legal guardian and the parent, spouse who is not an underage person, or legal guardian is present at the time of the person's possession or consumption of the beer or intoxicating liquor.

An owner of a public or private place is not liable for acts or omissions in violation of this division that are committed by a lessee of that place, unless the owner authorizes or acquiesces in the lessee's acts or omissions.

{¶ 12} A violation of R.C. 4301.69(B) is a misdemeanor of the first degree. R.C. 4301.99(C).

6.

{¶ 13} "[D]etermining whether a statute is civil or criminal is a matter of statutory interpretation." *State v. Cook*, 83 Ohio St.3d 404, 415, 700 N.E.2d 570 (1998). A court determines legislative intent when interpreting a statute in its entirety, using the language employed, "'and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.'" (Citation omitted.) *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246, ¶ 10. When a statute is unambiguous, we apply the statute as written. *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, 86 N.E.3d 279, ¶ 15. Where a violation of a statute is clearly penal, there is no question the legislature intended the statute to be criminal. *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 22.

{¶ 14} We expect that if the state legislature wanted to create civil liability in addition to a criminal offense, it would have done so. *State v. Britton*, 6th Dist. Lucas No. L-06-1265, 2007-Ohio-2147, ¶ 14, citing *Miller v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 24 (the doctrine of expressio unius est exclusio alterius means the express inclusion of one thing implies the exclusion of the other). "Courts will not infer that a statute grants a private right of action unless the language of the statute indicates a clear intent that the legislature intended such a remedy." *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 15. Generally no private right of action in an individual's name is created by a purely criminal statute because criminal statutes only give rise to a right of prosecution by the state. *Wurdlow v. Turvy*,

7.

2012-Ohio-4378, 977 N.E.2d 708, ¶ 11 (10th Dist.); *Cort v. Ash*, 422 U.S. 66, 79-80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Ibanez v. Mosser*, 10th Dist. Franklin No. 11AP-1100, 2012-Ohio-4375, ¶ 10.

{¶ 15} We find that R.C. 4301.69(B) is a criminal statute that, standing alone, does not authorize appellants to pursue a private cause of action in their names against appellees. When courts have found civil liability for a violation of R.C. 4301.69, it is related to a former version of the statute which tracked the language of the current R.C. 4301.69(A) prohibiting the sale, buying, or furnishing of alcohol to an underage person. *See Lesnau v. Andate Enterprises, Inc.*, 93 Ohio St.3d 467, 472-73, 756 N.E.2d 97 (2001); *see also State v. Jones*, 57 Ohio App.3d 155, 567 N.E.2d 313 (9th Dist.1989), syllabus; *see also Huston v. Konieczny*, 52 Ohio St.3d 214, 218, 556 N.E.2d 505 (1990); *see also Mitseff v. Wheeler*, 38 Ohio St.3d 112, 114, 526 N.E.2d 798 (1988).

{¶ 16} We find appellants' arguments for their second assignment of error are irrelevant. Upon de novo review of the record pursuant to Civ.R. 56, we find that the statute at issue, R.C. 4301.69(B), pertains to a criminal offense and does not provide appellants with a private right of action. There is no genuine issue as to any material fact, and appellees, as the moving party, are entitled to judgment as a matter of law.

{¶ 17} Appellants' second assignment of error is not well-taken.

### III. No Common Law Social Host Liability

{¶ 18} In support of their third assignment of error, appellants argue the trial court "is simply wrong that Appellees had no duty to protect Noe from the danger [of Housel's

8.

pouring alcohol onto an open flame]." Appellants argue that Noe was invited by Housel to his house for a party. Housel was roommates with appellees, Leis' son and others. As roommates, appellants argue appellees were "co-tenants and co-hosts of the party * * * [and] owed Janelle a duty not to cause her injury" under the authority of *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951). Appellants argue that although "the danger presented by Housel's playing with fire and high proof liquor may have been equally apparent to Appellant and Appellee," only appellees "had the duty to intervene and prevent Housel from injuring Janelle or anyone else by his dangerous antics." Appellants further argue, "While all may have appreciated the danger presented, it was Appellees' duty to take action to prevent injury." Appellants characterized this as appellees' "duty to intervene and prevent their drunken co-host Chris Housel, from injuring their guests by playing with fire."

{¶ 19} Under common law the status of a social guest on a premises is somewhat unique. "A reasonable solution of the difficulty of forcing social guests into any one of the three molds commonly recognized, to wit, trespasser, licensee or invitee, is solved by ceasing such effort and merely considering and discussing social guests as social guests and by referring to the one owing the duty and obligation to the guest as the host." *Id.* at 328. "A social guest is not a business visitor and is not an 'invitee' as that term is used in tort law." *Id.* at paragraph one of the syllabus. "A host is not an insurer of the safety of a guest while upon the premises of the host and there is no implied warranty on the part of

9.

a host that the premises to which a guest is invited by him are in safe condition." *Id.* at paragraph two of the syllabus.

> A host who invites a social guest to his premises owes the guest the duty: (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.

*Id.* at paragraph three of the syllabus.

{¶ 20} "Liability of a host for injury to a social guest must be predicated upon negligence." *Id.* at 328. "To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969). In order to establish proximate cause, foreseeability of injury resulting from the negligent act must be found. *Id.* at 321-22.

10.

## A. Duty of Ordinary Care

{¶ 21} The first common law duty of a social host is to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises.

{¶ 22} First, we must determine if appellees were the social hosts of Noe. "In order to be classified as a social guest, there must be evidence of an actual invitation the host extended to the guest, express or implied." *Ard v. Fawley*, 135 Ohio App.3d 566, 571, 735 N.E.2d 14 (3d Dist.1999), citing *Williams v. Cook*, 132 Ohio App.3d 444, 449, 725 N.E.2d 339, 342 (3d Dist.1999); *Reddick v. Said*, 11th Dist. Lake No. 2011-L-067, 2012-Ohio-1885, ¶ 41; *Hall v. Watson*, 7th Dist. Mahoning No. 01 CA 55, 2002-Ohio-3176, ¶ 27. "[T]he actual invitation must be for the specific visit. The fact that a person was a frequent visitor or social guest in the past is insufficient to confer social guest status on the person for a present visit." *Estill v. Waltz*, 10th Dist. Franklin No. 02AP-83, 2002-Ohio-5004, ¶ 32, citing *Ard* at 572.

{¶ 23} The record shows Housel, not appellees, invited Noe to the house on January 15, 2016. Housel testified at his deposition he sent Noe and others on the cross-country team Snapchat messages inviting them to his house that evening to "hang out." Noe testified at her deposition that she received Housel's text message and described the event as, "I told my dad some of the guys on the cross-country team were having people over, so I was just going to go over there." Noe testified she previously attended similar gatherings four times at the premises: twice for a Halloween-themed party to celebrate

11.

the end of the cross-country season and twice for "having people over for like football, and they were drinking and doing that kind of stuff." Although she felt like a baby sitter when she went to the premises, she still went because, "I have a right to hang out with my teammates." Caddell and Talbot were aware of about 10-15 people hanging out at their house on January 15, 2016. Although Noe made numerous prior visits to the premises, we do not find evidence in the record that appellees expressly invited Noe to their house on January 15, 2016. At most the evidence shows appellees did not oppose Noe's arrival to their house that night, which is not the same as appellees impliedly inviting Noe to be their social guest.

{¶ 24} Even if we determined appellees were the social hosts to Noe on January 15, 2016, we do not find appellees caused injury to Noe by their acts or the activities they carried on. "The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances. A person is to exercise that care necessary to avoid injury to others." *Mussivand*, 45 Ohio St.3d at 318-19, 544 N.E.2d 265.

{¶ 25} Prior to January 15, 2016, Noe never observed Housel at the premises trying to ignite anything or ever seeing the Everclear alcohol. Her unexpected injury occurred within 30 minutes of her arrival at the premises when Housel poured a lot of Everclear on a burning candle in a glass jar.

12.

Q: They [Talbot and Caddell] didn't cause anything to burn you?

A: No.

* * *

Q: You indicated you – it happened quickly when [Housel] poured that stuff into the container that was a candle holder?

A: Correct.

Q: You didn't expect it?

A: No.

Q: Do you have any reason to believe anybody else that may have been in the room would have expected that or seen it coming?

A: I don't know.

{¶ 26} Appellants argue that Housel and appellees were each underage drinkers at the premises, known for being "the spot" where University of Toledo cross-country teammates gather on weekends "to drink alcohol and hangout." On the night in question, appellants argue the underage appellees knew the underage Housel was voluntarily "consuming beer and the Everclear, and * * * was visibly intoxicated." Appellants argue Housel's intoxicated condition increased appellees' duty of care to warn Noe of the dangers of Housel "playing with the alcohol and fire" and to intervene on her behalf.

{¶ 27} We do not find a heightened standard applies as Noe was not an infant. *Di Gildo*, 18 Ohio St.2d at 128, 247 N.E.2d 732. First, there is no indication that *Di Gildo* applies where the social hosts, the alleged tortfeasor, and the victim are each

concurrently subject to the same, involuntary condition of being underage drinkers, yet adults over 18 years old. R.C. 4301.69(H)(5) and 3109.01. On the date of the incident, January 15, 2016, Housel was two weeks shy of his 21st birthday; Noe was three months shy of her 21st birthday; Caddell was three months shy of his 20th birthday; and Talbot was four months shy of his 20th birthday. Second, there is no indication that *Di Gildo* applies where, although underage, the victim was neither an infant nor unable to discern danger on January 15, 2016. Noe was an adult, nearly 21 years old, and was a non-drinker. During her deposition she was able to describe the events of January 15, 2016, and describe her physical surroundings at the premises. She clearly described where in the house Housel was in relation to her when he poured the Everclear into the candle jar: he was just a few feet from her or about an arm's length away. Third, there is no evidence Talbot and Caddell caused the injury to Noe by their own acts while she was on the premises. It is undisputed Housel alone ignited the Everclear in the candle jar that burst in flames onto Noe. It is undisputed Caddell was not in the room where the incident happened. It is undisputed that neither Noe, Talbot, Caddell, nor even Housel, anticipated that Housel would ignite the jar's contents onto Noe.

{¶ 28} Noe, Talbot and Caddell testified at their depositions that none saw Housel play with fire around the house prior to January 15, 2016. That night, three undisputed events occurred in the three minutes prior to the accident: first, Housel unsuccessfully tried to ignite the spray from an aerosol air freshener; second, a few minutes later Housel successfully ignited a small amount of Everclear in a candle jar that drew the curiosity of

14.

those present, including Noe; and third, Housel immediately poured a large amount of Everclear over the flame in the candle jar, and an uncontrollable fireball shot towards Noe. Caddell was not present, but Talbot was: "There was a – pretty much a large ball of fire, it was very hot, so I turned away. * * * And then turned back, and Janelle was on fire."

{¶ 29} Housel testified at his deposition that appellees were not involved in his decision to ignite the Everclear on the premises.

Q: And fast forward then to the night January 15th, who recommended you do that [fireball with Everclear] again?

A: Probably Josh.

* * *

Q: What did you do?

A: I grabbed the, a candle bowl that we had and I poured Everclear in it and then I put it to the side and ignited that. * * * And then I had a bad idea to pour the bottle into the ignited candle stick, candle bowl.

{¶ 30} We find appellants have not met their burden in determining the record contains any issue of material fact that establish appellees owed a common law duty of ordinary care to Noe the night of January 15, 2016. There is no genuine issue of material fact whether appellees were social hosts who caused Noe's injuries by their acts.

## B. Judicial Notice

{¶ 31} Because we determined appellees were not the social hosts to Noe on January 15, 2016, we do not find appellees owed Noe the second common law duty to warn. Despite appellants' contrary urging, they point to no authority showing that if appellees had a duty to warn Noe of a dangerous condition of the premises, the duty to warn is transformed into a duty to intervene and restrain Housel from playing with fire in his residence. Nor do appellants present any evidence of any dangerous condition of the premises to trigger the duty to warn. Rather, they seem to argue the dangerous condition was appellees' roommate, Housel, playing with fire and Everclear at their home. Housel's lawful residency in his home on January 15, 2016, was not a dangerous condition of the premises. The record shows everyone present, including Housel himself, was surprised by Housel's instantaneous "bad idea" to pour a lot of Everclear over the flame in a glass jar. Appellants' request for judicial notice of a fact about Everclear is not evidence of foreseeability of a dangerous condition of the premises.

{¶ 32} In their brief to this court, appellants request us to take judicial notice, as follows:

> One does not need to be Nostradamus (or even Miss Cleo) to foresee that injury to person or property was likely to result from the intoxicated Chris Housel's playing with high proof liquor and fire. This Court can take judicial notice of the fact that Everclear is in the Guinness Book of World Records as the most alcoholic drink in the world clocking in at 190 proof or

95% alcohol. Appellees were well aware of the flammability factor, as Mr. Housel had accomplished at least one "poof" by pouring the alcohol onto a lit flame prior to the bottle exploding on Ms. Noe. Again, it does not take the gift of second sight to appreciate that a drunken individual playing with fire and an accelerant is likely to have a very bad outcome, and result in injury to person and/or property.

{¶ 33} Appellees opposed judicial notice arguing, "Asking this court to take judicial notice of a claimed authoritative source doesn't establish that the Appellant has met her burden of proving that the trial court failed to recognize fact issues."

{¶ 34} Judicial notice is governed by Evid.R. 201, which states:

(A) Scope of Rule. This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case.

(B) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(C) When Discretionary. A court may take judicial notice, whether requested or not.

(D) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

17.

(E) Opportunity to Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(F) Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding.

(G) Instructing Jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

{¶ 35} Judicial notice allows a court to accept, without proof, a well-known and indisputable fact for the purpose of convenience. *Pollard v. Elber*, 2018-Ohio-4538, 123 N.E.3d 359, ¶ 14 (6th Dist.). However, we find the judicial notice of fact sought by appellants fails this purpose and does not support their burden on summary judgment.

{¶ 36} Appellants point to a Fourth District Court of Appeals' decision that, "Pursuant to Evid.R. 201(F), judicial notice may be taken at any stage of the proceeding, including on appeal." *State v. Mays*, 83 Ohio App.3d 610, 614, 615 N.E.2d 641 (4th Dist.1992). That court continued, "Construing appellant's reference to Physician's Desk Reference as a request that we take judicial notice, then this court must do so, provided appellant has supplied this court with the necessary information. Evid.R. 201(D)." *Id.* The Fourth District Court of Appeals took "judicial notice of the fact that Betadine does

not contain alcohol" based on content it received into the record from the Physician's Desk Reference and Taber's Cyclopedic Medical Dictionary.

{¶ 37} We find appellants did not provide this court with documentary evidence from the *Guinness Book of World Records* or from Everclear pursuant to Evid.R. 201(D). We find that any commentary by the *Guinness Book of World Records* on Everclear is not generally known pursuant to Evid.R. 201(B)(1). We further find that any commentary by the *Guinness Book of World Records* on Everclear is hearsay pursuant to Evid.R. 801(C). *Pollard* at ¶ 15. We further find the accuracy of any commentary by the *Guinness Book of World Records* on Everclear can be reasonably questioned pursuant to Evid.R. 201(B)(2), as evidenced by appellees' opposition in the record with this court. We find that it is not convenient for this court to engage in a resolution of a factual dispute authorized by Evid.R. 201(E).

{¶ 38} We reviewed the record before us on appeal pursuant to App.R. 9(A)(1). *State v. Phillips*, 6th Dist. Lucas No. L-16-1097, 2017-Ohio-8769, ¶ 36-37. Judicial notice of factual evidence must be timely offered in a judicial proceeding, and we find appellants failed to submit their proposed "fact" when they opposed appellees' motion for summary judgment on September 15, 2017, and failed to provide a reasonable explanation to this court for failing to do so. *State ex rel. Richard v. Chambers-Smith*, 157 Ohio St.3d 16, 2019-Ohio-1962, 131 N.E.3d 16, ¶ 12.

{¶ 39} We decline to take judicial notice of appellants' proposed "'fact' that Everclear is in the Guinness Book of World Records as the most alcoholic drink in the

19.

world clocking in at 190 proof or 95% alcohol."  Appellees were not the social hosts of Noe on January 15, 2016, and even if they were, the request for judicial notice does not eliminate appellants' burden on the essential elements of negligence, including foreseeability.  We do not find appellants' request for judicial notice of a proposed "fact" creates a genuine issue of material fact to defeat summary judgment.

{¶ 40} We reviewed the record de novo and do not find appellants met their burden to create any issues of fact that were both genuine and material to establish appellees breached their common law duty of ordinary care to Noe the night of January 15, 2016.  Where there is no genuine issue as to any material fact, appellees, as the moving party, are entitled to judgment as a matter of law.  Civ.R. 56(C)

{¶ 41} Appellants' third assignment of error is not well-taken.

### III.  Conclusion

{¶ 42} On consideration whereof, this court finds that there remain no genuine issues of material fact and, after construing all the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion that appellees are entitled to summary judgment as a matter of law.  The judgment of the Lucas County Court of Common Pleas is affirmed.  Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
Gene A. Zmuda, P.J. _____                     JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.