[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Felix v. Ganley Chevrolet, Inc.,* Slip Opinion No. 2015-Ohio-3430.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3430

FELIX ET AL., APPELLEES, *v*. GANLEY CHEVROLET, INC., ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Felix v. Ganley Chevrolet, Inc.,* Slip Opinion No. 2015-Ohio-3430.]

*Class actions—Ohio Consumer Sales Practices Act—R.C. Chapter 1345—All members of a plaintiff class alleging violations of the Ohio Consumer Sales Practices Act must have suffered injury as a result of the conduct challenged in a suit under the act.*

(No. 2013-1746—Submitted September 24, 2014—Decided August 27, 2015.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 098985, 2013-Ohio-3523.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we address whether all members of a plaintiff class alleging violations of the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. Chapter 1345, must have suffered injuries as a result of the conduct challenged in

the suit. We hold that they must and therefore reverse the judgment of the court of appeals.

## RELEVANT BACKGROUND

{¶ 2} This appeal arises from two related class-action lawsuits that were first brought by appellees, Jeffrey and Stacy Felix, nearly 15 years ago. In each suit, the Felixes sought damages from appellants, Ganley Chevrolet, Inc., and Ganley Management Company (collectively, "Ganley"), as well as declaratory and injunctive relief. Although the issues before us are discrete legal ones, we summarize the history of the case for context.

### *The Transaction*

{¶ 3} The Felixes contend that they went to Ganley in March 2001 to purchase a 2000 Chevy Blazer. They allege that Ganley used a zero-percent-interest financing offer to lure Jeffrey Felix to sign a contract to purchase the vehicle.

{¶ 4} The purchase contract provided that it was "not binding unless accepted by seller and credit is approved, if applicable, by financial institution." The contract also contained an arbitration clause that required that "any dispute between you and dealer (seller) will be resolved by binding arbitration."[1]

{¶ 5} When the Felixes returned a few days later to sign the promissory note and security agreement, Ganley purportedly told them that the financing institution would approve them for financing only at 1.9 percent interest, not at

---

[1] The arbitration clause was placed immediately after the heading "Optional Equipment:"

> B. OPTIONAL EQUIPMENT Arbitration-Any dispute between you and dealer (seller) will be resolved by binding arbitration. You give up your right to go to court to assert your rights in this sales transaction (except for any claim in small claims court). Your rights will be determined by a neutral arbitrator, not a judge or jury. You are entitled to a fair hearing, but arbitration procedures are simpler and more limited than rules applicable in court. Arbitrator decisions are as enforceable as any court order and are subject to a very limited review by a court. See general manager for information regarding arbitration process.

the zero percent interest previously represented to them. The Felixes reluctantly agreed to the 1.9 percent rate.

{¶ 6} More than a month later, Ganley informed the Felixes that they had not been approved for financing at the 1.9 percent interest rate. Ganley told the Felixes that they could obtain a 9 percent interest rate with Huntington Bank; the Felixes claim that Ganley contacted Huntington Bank without their permission. The Felixes refused. Soon thereafter, they brought the first of two suits against Ganley in the Cuyahoga County Common Pleas Court.

*The Initial Lawsuit*

{¶ 7} In their first action, which would become a class-action suit with the Felixes as representatives of the class, the Felixes sought damages under the OCSPA.[2]

{¶ 8} The first three counts of the complaint alleged the class-action claims that are at issue here. The first count asserted that the arbitration clause used by Ganley was unconscionable and that various practices of Ganley pertaining to the clause violated the OCSPA. Counts two and three alleged that Ganley had committed unfair and deceptive consumer sales practices against the class.

{¶ 9} In their prayer for relief for the class, the Felixes sought certification of their proposed classes of plaintiffs and defendants, an order declaring the arbitration clause unconscionable and void, injunctive relief, "monetary damages against Defendants, jointly and severally, where appropriate to each plaintiff," and reasonable attorney fees and costs. The Felixes did not specifically request $200 in damages for each class member. Nor did they seek actual damages for

---

[2] The original complaint was filed in 2001 as a suit by the Felixes, individually, against Ganley. The fourth amended complaint, filed in May 2003, brought suit by the Felixes on their own behalf and on behalf of a class. The Felixes described the class as "all consumers of vehicles from any of the Ganley companies, within the two year period preceding commencement or since, who signed a purchase agreement containing the following arbitration clause, or anything substantially similar to it * * *."

each class member. They did, however, make those requests in their prayer for relief in their *individual* capacities. More specifically, in their individual capacity, they sought "three times the amount of their actual damages or two hundred dollars ($200.00), for each unlawful act specified, whichever is greater," punitive damages, attorney fees and costs, and injunctive relief.

*The Second Lawsuit*

{¶ 10} The second lawsuit, brought several months after the first suit, is a declaratory-judgment action. The declaratory-judgment action also became a class-action suit.

{¶ 11} The first count of the declaratory-judgment complaint sought a declaration that the arbitration clause is unconscionable. The second, third, and fourth counts sought declarations that Ganley committed unfair and deceptive consumer sales practices with respect to the arbitration clause. And count five requested a declaration that Ganley made false statements, representations, and disclosures of fact and defrauded customers as to the arbitration clause.

{¶ 12} Ganley moved to stay the proceedings in both suits so that arbitration in accordance with the arbitration clause could proceed. The trial court held a consolidated hearing on the motions and denied them without opinion. Ganley appealed that order to the Eighth District Court of Appeals.[3] *Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500, 2006 WL 2507469 ("*Felix I*").

*The Initial Appeal:* **Felix I**

{¶ 13} In its appeal from the denial of the motion to stay, Ganley argued that the trial court erred by failing to stay the proceedings pending arbitration pursuant to R.C. 2711.02 because the purchase contract contains a clear and conspicuous arbitration clause. The Eighth District affirmed the trial court's

---

[3] An order granting or denying a motion for stay pending arbitration is a final, appealable order. R.C. 2711.02(C).

judgment, holding that the arbitration clause was unconscionable and that there was no valid, enforceable agreement that required the parties to arbitrate.

{¶ 14} In so doing, the appellate court recognized that R.C. 2711.02(B) requires a trial court, upon application of a party, to stay proceedings in any action in which the court is satisfied that an issue in the case is subject to arbitration pursuant to a written agreement between the parties. *Felix I* at ¶ 12. But it also noted that R.C. 2711.01(A) provides that a provision for arbitration "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." *Id.* at ¶ 15. It then turned to the Felixes' claims that the arbitration provision was unconscionable and concluded that it was both procedurally and substantively unconscionable. *Id.* at ¶ 22-23.

{¶ 15} We declined Ganley's request for review of that decision, *Felix v. Ganley Chevrolet, Inc.,* 112 Ohio St.3d 1470, 2007-Ohio-388, 861 N.E.2d 144, and therefore the unconscionability of the arbitration clause is not before us in this appeal. The issues before us arose after the Eighth District remanded the cause to the trial court.

***The Remand***

{¶ 16} After remand, the parties litigated for another five years. Eventually, the trial court certified a class of plaintiffs pursuant to Civ.R. 23(B)(2) and (B)(3) and ruled that all class members could recover damages.

{¶ 17} The putative class includes the following:

> All consumers of Vehicles from any of the 25 Ganley Companies (see Plaintiff's Chart, Exhibit A, filed August 18, 2003) within the two-year period preceding commencement through the present date (the Class Period), who signed a purchase agreement containing the arbitration clause at suit or one substantially similar thereto.

**{¶ 18}** The trial court held that Ganley's inclusion of the arbitration provision in its purchase agreements with consumers violated the OCSPA and established a basis for classwide relief under Civ.R. 23(B)(2) and (B)(3). It then announced that it would "issue relief to protect those class members from prejudice" caused by Ganley's "common course of conduct" in the use of the arbitration clause. It noted that "[r]e-litigating a class member's right to relief over and over again would be a drain on the judiciary and serve no valid purpose" and that "[f]ew if any class members would likely be able to effectively challenge [Ganley] due to the cost of litigation." The trial court ruled that the OCSPA at least permitted, and perhaps required, a classwide award of damages for Ganley's conduct, which it described as a "significant violation of the law." The trial court wrote, "To allow [Ganley] to emerge from this seven-year legal battle, during which time they continued to use the offending clause, without sanction, would defeat the policies underlying CSPA and the rule of law" and "reward lawlessness aimed primarily at consumers." Citing its "discretion," the trial court awarded $200 per transaction to each class member.

**{¶ 19}** Ganley again appealed.

*The Second Appeal:* **Felix II**

**{¶ 20}** Before the Eighth District, Ganley argued that the trial court "erred as a matter of law and abused its discretion in certifying, for purposes of a claim under the [CSPA], a class of customers who signed purchase agreements that included an arbitration provision." (Brackets sic.) A divided panel of the appellate court affirmed the trial court's order certifying the class. 8th Dist. Cuyahoga No. 98985, 2013-Ohio-3523, 2013 WL 4238945 ("*Felix II*"). In so doing, it rejected Ganley's claims that the class definition and time period were overbroad and ambiguous, *id.* at ¶ 12-15, and that the Felixes had not established the commonality, predominance, and typicality prerequisites to class certification set forth in Civ.R. 23(B), *id.* at ¶ 17-36.

**{¶ 21}** The appellate court rejected Ganley's claim that certifying an "all customers" class for the OCPSA violation was improper on the ground that the class contained individuals who had not sustained actual damages as a result of Ganley's inclusion of the arbitration provision in its sales agreements. But it did so without squarely addressing the crux of Ganley's claim, i.e., that there was no showing that all class members had suffered damages. Instead, the majority held that the propriety of the trial court's order on damages was outside the scope of the appellate court's scope of review because Ganley had assigned as error only the trial court's certification of the class. *Id*. at ¶ 44.

***The Appeal Before Us***

**{¶ 22}** Ganley sought this court's discretionary review. We agreed to address the following propositions of law:

> A class action cannot be maintained on behalf of a putative class that includes individuals who did not sustain actual harm or damage as a result of the challenged conduct, which is a required part of the rigorous analysis under Ohio R. Civ. P. 23; [and]

> In a class action brought under the Ohio Consumer Sales Practices Act, R.C. 1345.09(B) requires the consumers to have sustained actual damages as a result of the challenged conduct.

*See* 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1215.

**ANALYSIS**

**{¶ 23}** This appeal arises at the intersection of class-action suits and the OCSPA.

**{¶ 24}** The procedural aspects of class-action litigation in Ohio are controlled by Fed.R.Civ.P. 23 and Civ.R. 23, depending on whether the matter proceeds in a federal or state court in Ohio. Here, Civ.R. 23 governs. Because

the Ohio Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, federal law interpreting the federal rule is appropriate and persuasive authority in interpreting a similar Ohio rule. *Stammco, L.L.C. v. United Telephone Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 944 N.E.3d 408, ¶ 18, citing *Myers v. Toledo,* 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, ¶ 18, and *Marks v. C.P. Chem. Co., Inc.,* 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

**{¶ 25}** We are mindful that class-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties. *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013), citing *Califano v. Yamasaki*, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). To fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions. *Id.*, citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ____, 131 S.Ct. 2541, 2551-2552, 180 L.Ed.2d 374 (2011).

**{¶ 26}** The United States Supreme Court has insisted that courts give careful consideration to the class-certification process, holding that Fed.R.Civ.P. 23 is not "a mere pleading standard." *Dukes*, 564 U.S. ____, 131 S.Ct. at 2551. Rather, the party seeking class certification must affirmatively demonstrate compliance with the rules for certification and be prepared to prove "that there are *in fact* sufficiently numerous parties, common questions of law and fact, etc." (Emphasis sic.) *Id*. After *Dukes*, there can be no dispute that a trial court's rigorous analysis of the evidence often requires looking into enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims. *Id*. at 2552. *See also In re Rail Freight Fuel Surcharge Antitrust Litigation—MDL No. 1869*, 725 F.3d 244, 253 (D.C.Cir.2013). In doing so, however, the trial court may probe the underlying merits of the cause of action only for the purpose of determining that the plaintiff has satisfied Civ.R. 23. *Stammco at ¶ 40*.

**{¶ 27}** Because the appeal before us involves the certification of a class for claims based on alleged violations of the OCSPA, it is necessary to set forth briefly the relevant provisions in that statutory scheme.

**{¶ 28}** During the period set forth in the class action, the OCSPA provided that a consumer was entitled to relief *in an individual action* by rescinding the transaction or recovering damages. Former R.C. 1345.09(A), Am.Sub.H.B. No. 681, 137 Ohio Laws, Part II, 3219, 3226-3227. The term "damages" as used in the OCSPA encompasses all forms of pecuniary relief, although it does include "actual damages" and "compensatory damages." *See Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 14.

**{¶ 29}** Although the OCSPA authorized class actions, it limited the scope of damages that were available in them. Treble and statutory damages were not available in class-action claims brought under the OCSPA. Former R.C. 1345.09(B), 137 Ohio Laws, Part II, at 3227 ("the consumer may rescind the transaction or recover, *but not in a class action*, three times the amount of his actual damages or two hundred dollars, whichever is greater, or *recover damages or other appropriate relief in a class action* under Civil Rule 23" [emphasis added]). Instead, according to one Ohio court, the OCSPA limited the damages available in class actions to actual damages, *Washington v. Spitzer Mgt., Inc.,* 8th Dist. Cuyahoga No. 81612, 2003-Ohio-1735, ¶ 33.

**{¶ 30}** This damage limitation is consistent with a policy determination that while treble or statutory damages, punitive damages, and attorney fees are available in actions under consumer-protection statutes to encourage consumers with smaller amounts of damages to bring their claims, *Whitaker* at ¶ 11, citing *Parker v. I&F Insulation Co., Inc.*, 89 Ohio St.3d 261, 268, 730 N.E.2d 972 (2000); *see also* Sovern, *Private Actions Under the Deceptive Trade Practices Acts: Reconsidering the FTC Act as Rule Model*, 52 Ohio St.L.J. 437, 462 (1991), treble statutory damages are not awarded in class actions because class-action

lawsuits deter violations of the law by permitting the aggregation of claims. In fact, some courts have suggested that the General Assembly limited damages for class-action suits under the OCSPA in order to protect defendants from being held liable for "huge damage awards." *See*, *e.g.*, *Washington* at ¶ 33.

**{¶ 31}** Plaintiffs bringing OCSPA class-action suits must allege and prove that actual damages were proximately caused by the defendant's conduct. *Konarzewski v. Ganley, Inc.,* 8th Dist. Cuyahoga No. 92623, 2009–Ohio–5827, ¶ 46 ("class action plaintiffs must prove actual damages under the CSPA"). Proof of actual damages is required before a court may properly certify a class action. *Searles v. Germain Ford of Columbus, L.L.C.*, 10th Dist. Franklin No. 08AP-728, 2009-Ohio-1323, ¶ 22. *See also Butler v. Sterling, Inc.*, 6th Cir. No. 98-3223, 2000 WL 353502, *4 (Mar. 31, 2000); *Johnson v. Jos. A. Bank Clothiers, Inc.,* S.D.Ohio No. 2:13-cv-756, 2014 WL 4129576, *3-4 (Aug. 19, 2014).

**{¶ 32}** These requirements are consistent with the majority of decisions by other states' appellate courts, which also hold that plaintiffs who bring private causes of actions under their states' consumer-protection statutes are required to plead and prove actual damages or injury.[4] *See*, *e.g.*, *Meyer v. Sprint Spectrum*

---

[4] Some courts treat the failure to sufficiently allege and demonstrate damages in consumer-protection claims as a failure to establish standing or ripeness. *See, e.g., Neese v. Lithia Chrysler Jeep of Anchorage, Inc.,* 210 P.3d 1213, 1219, 1222 (Alaska 2009) (holding that there was no error in dismissing, on standing grounds, a complaint alleging violation of Alaska's consumer-protection law and other claims when the complaint did not allege that an injury was caused by a car dealership); *Lee v. Am. Express Travel Related Servs.*, 348 Fed.Appx. 205, 207, 2009 WL 2017665 (9th Cir.2009) (affirming dismissal of putative class-action claims against credit-card issuers who allegedly violated California's consumer-protection statute by including unconscionable arbitration provisions in their credit-card agreements because the plaintiffs had not been injured by the "mere inclusion" of those provisions in the agreements); *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319-320 (5th Cir.2002) (holding that plaintiffs lacked standing to bring complaint alleging violation of Texas's consumer-protection law and other claims against a drug manufacturer because the complaint did not allege injury and causation); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1341 (11th Cir.2000) ("In light of the increasing use of [arbitration] agreements in a wide variety of consumer transactions, as well as in the employment context, requiring a plaintiff seeking relief from an arbitration agreement to demonstrate a real threat that the agreement will be invoked against him helps maintain a manageable caseload for the courts and prevents courts from becoming merely legal counselors and their adjudications

*L.P.*, 45 Cal.4th 634, 642-643, 88 Cal.Rptr.3d 859, 200 P.3d 295, (2009); *Wallis v. Ford Motor Co.*, 362 Ark. 317, 327-328, 208 S.W.3d 153 (2005); *Tietsworth v. Harley-Davidson, Inc.*, 270 Wisc.2d 146, 169, 677 N.W.2d 233 (2004); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 741 N.Y.S.2d 9, 12-13 (2002); *Yu v. Internatl. Business Machines Corp.*, 314 Ill.App.3d 892, 845-846, 732 N.E.2d 1173 (2000); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 783-784, 792, 719 P.2d 531 (1986). *See also Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 255 (1st Cir.2010) (suggesting that recent decisions of the Supreme Judicial Court of Massachusetts show that an actual injury is required to succeed on claim brought pursuant to the Massachusetts consumer-protection statute). It is also consistent with the Supreme Court's instruction that trial courts are to give more careful consideration in the class-certification process. *See, e.g., Dukes*, 564 U.S.____, 131 S.Ct. at 2552, 181 L.Ed.2d 374.

{¶ 33} Plaintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. *In re Rail Freight Fuel Surcharge Antitrust Litigation—MDL No. 1869*, 725 F.3d at 252. Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, *Behrend,* 569 U.S. ____, 133 S.Ct. at 1433, 185 L.Ed.2d 515, citing *Story Parchment Co. v. Patterson Parchment*

---

merely advice. If and when [the lender] seeks to compel arbitration of a [Truth in Lending Act, 15 U.S.C. 1601 et seq.] claim, the plaintiffs can challenge the agreement as unenforceable at that time" [footnote omitted]), citing *Bd. of Trade of the City of Chicago v. Commodity Futures Trading Comm.*, 704 F.2d 929, 933 (7th Cir.1983). The questions before us are framed neither as standing nor ripeness issues, and we intimate no opinion on those questions of law, particularly given that the United States Supreme Court is now considering, on standing grounds only, whether a plaintiff may bring suit under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq., alleging as his injury only violations of his statutory rights under the act. *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir.2014), *cert. granted*, ____ S.Ct. ____, 82 U.S.L.W. 3689, 2015 WL 1879778 (Apr. 27, 2015).

*Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931), they must adduce common evidence that shows all class members suffered *some* injury. *In re Rail Freight Fuel Surcharge Antitrust Litigation* at 252, citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), and *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815-816 (7th Cir.2012).

**{¶ 34}** The inquiry into whether there is damage-in-fact is distinct from the inquiry into actual damages: "[f]act of damage pertains to the existence of injury, as a predicate to liability; actual damages involves the quantum of injury, and relate to the appropriate measure of individual relief." *Martino v. McDonald's Sys., Inc.*, 86 F.R.D. 145, 147 (N.D.Ill.1980). As one federal trial court recently explained,

> When evaluating damages in the predominance inquiry, "[t]he *amount* of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack,* 524 F.2d 891, 905 (9th cir.1975) (emphasis added); *see also Negrete v. Allianz Life Ins. Co. of North America,* 238 F.R.D. 482 (C.D.Cal.2002). While determining the *amount* of damages does not defeat the predominance inquiry, a proposed class action requiring the court to determine individualized *fact* of damages does not meet the predominance standards of Rule 23(b)(3). *See In re Live Antitrust Litigation,* 247 F.R.D. 98 (C.D.Cal.2007) (recognizing the distinction between demonstrating the fact of damages and the amount of damages, and determining that while the latter does not preclude class certification, the former does.); *Catlin v. Washington Energy Co.,* 791 F.2d 1343, 1350 (9th Cir.1986) ("[T]he requirement that plaintiff prove 'both the fact of damage and the amount of damage * * * are two separate proofs.' ")

*Gonzales v. Comcast Corp.,* E.D.Cal. No. 10–cv–01010–LJO–BAM, 2012 WL 10621, *18 (Jan. 3, 2012).

{¶ 35} If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class members), there is no showing of predominance under Civ.R. 23(b)(3). *See Behrend*, 569 U.S. ___, 133 S.Ct. at 1432; *see also Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.3d 614, ¶ 48. Indeed, a key purpose of the predominance requirement is to test whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods.* at 623.

{¶ 36} "Perhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury. Apart from a showing of wrongful conduct and causation, proof of actual harm to the plaintiff has been an indispensable part of civil actions." Schwartz & Silverman, *Common Sense Construction of Consumer Protection Acts*, 54 U.Kan.L.Rev. 1, 50 (2005). We agree, and we hold that all members of a class in class action litigation alleging violations of the OCSPA must have suffered injury as a result of the conduct challenged in the suit.

{¶ 37} Here, the class, as certified, fails because there is no showing that all class members suffered an injury in fact. The broadly defined class encompasses consumers who purchased a vehicle at Ganley through a purchase contract that contained the unconscionable arbitration provision. But there is absolutely no showing that all of the consumers who purchased vehicles through a contract with the offensive arbitration provision were injured by it or suffered any damages.

{¶ 38} The trial court's holding that it could award $200 to each member of the class as a matter of the trial court's discretion is based on a fiction. There is no authority in the statutory scheme or in our precedent to support a damages

award to a class member in class action litigation arising from the OCSPA absent a showing that the class member was injured and sustained damages as a result of the defendant's conduct.

{¶ 39} To the extent that the Felixes contend that they and other class members are entitled to statutory damages as class members because R.C. 1345.09 does not limit the term "damages" to "actual damages," they are mistaken. That conclusion ignores the General Assembly's clear intent, expressed in the statute's language, to distinguish between damages available "in an individual action," former R.C. 1345.09(A), 137 Ohio Laws, Part II, at 3227, "but not in a class action," former R.C. 1345.09(B), *id*.

{¶ 40} Nor is our review of the question of class members' damages, or lack thereof, foreclosed for want of a final, appealable order, as the Felixes contend. The certification of the putative class is before us, and as the dissenting judge in the court of appeals recognized, "the CSPA's damages limitation impacts not only the damages that may ultimately be recovered by a properly certified class but whether a putative class may be properly certified as a Civ. R. 23(B)(3) CSPA class in the first instance." *Felix II*, 2013-Ohio-3523, ¶ 72 (Rocco, J., dissenting).

{¶ 41} Because the class certified in this case includes plaintiffs whose damages are, at best, inchoate, the class as certified is inconsistent with former R.C. 1345.09(B), 137 Ohio Laws, Part II, at 3227, and Civ.R. 23. *See Stammco, L.L.C.*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 53, quoting *Messner*, 669 F.3d at 824 (" 'If * * * a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification' "). Although trial judges enjoy broad discretion in determining whether a class can be certified, that discretion is not unlimited, particularly when, as here, the trial judge completely misconstrues the letter and

spirit of the law. *Howland v. Purdue Pharma L.P.*, 104 Ohio St.3d 584, 2004-Ohio-6552, 821 N.E.2d 141, ¶ 25.

{¶ 42} Accordingly, we vacate the trial court's order certifying the class and remand the cause to the trial court for proceedings consistent with this opinion's guidance on the necessity of actual damages in class-action litigation based on the OCSPA. *See Warner v. Waste Mgt., Inc.,* 36 Ohio St.3d 91, 99, 521 N.E.2d 1091 (1988). *Accord Stammco, L.L.C.*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 12, citing *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987) (even when an appellate court finds that the trial court abused its discretion in crafting a class, the appellate court should not proceed to formulate the class or issue itself).

### CONCLUSION

{¶ 43} We reverse the judgment of the Eighth District Court of Appeals, and we remand the cause to the trial court for further proceedings consistent with our opinion.

Judgment reversed

and cause remanded.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., dissents.

_____

**O'NEILL, J., dissenting.**

{¶ 44} Respectfully, I dissent.

{¶ 45} I believe the majority blurs the line between maintaining a class action and meeting the burden of proof in a class action that alleges violations of the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. Chapter 1345. The majority distorts the distinction between the inquiry authorized by Civ.R. 23(B)(3) and the fundamental burden on all tort plaintiffs to prove damages. I write to express my concern that this confusion will fundamentally affect the

class-action practice in Ohio. And that would be a terrible outcome, for class actions do indeed provide a vital protection for all citizens of Ohio.

{¶ 46} The majority holds that certifying a class in this case requires showing actual damages, but it fails to state whether this is a requirement under the OCSPA that is independent of the requirements laid out in Civ.R. 23. Instead, this court fuses R.C. 1345.09(B) and the Fed.R.Civ.P. 23(B)(3) predominance principles set forth in *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, ___, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). The majority concludes that the class could not be certified, because appellees here had not shown that all the class members suffered an injury in fact.

{¶ 47} I agree with the majority that *Dukes* "requires looking into enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims," but "only for the purpose of determining that the plaintiff has satisfied Civ.R. 23." Majority opinion at ¶ 26. *Dukes* recognized the "necessity of touching aspects of the merits" in order to decide the *very preliminary* issue of class certification. *Dukes* at 2552; Civ.R. 23(C)(1) ("*As soon as practicable* after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained" [emphasis added]). The majority applies these principles but then elevates the preliminary inquiry into a full-blown examination of whether damages have been proved. This is simply not required in a preliminary inquiry under Civ.R. 23(B)(3). In effect, the majority touches on the merits in order to decide the merits at the class-certification phase. Under the rule announced today by the court, class-action plaintiffs will have to prove their case before they are given the opportunity to prove their case.

{¶ 48} The predominance inquiry under Civ.R. 23(B)(3) requires that plaintiffs show that there are "*questions* of law or fact that are common to the class." (Emphasis added.) *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 944 N.E.3d 408, ¶ 19. Plaintiffs do not need to show

up with *answers* to those questions when they are seeking class certification. Indeed, the United States Supreme Court clarified the preliminary nature of class certification in the post-*Dukes* era in *Amgen*, *Inc.*, *v. Connecticut Retirement Plans & Trust Funds*, ___ U.S. ___, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013). The court considered whether class-action plaintiffs had to prove an element of their claim as a prerequisite to class certification: "[Fed.R.Civ.P.] 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." (Emphasis sic.) *Id.* at 1191. The alternative, requiring the plaintiffs to "establish that [they] will win the fray," would "put the cart before the horse." *Id.* Whether the plaintiffs can or have met their burden of proof is a question appropriately relegated to a later phase of litigation—especially with regard to the element of damages. *Id.* at 1197 ("[An alleged failure of proof as to an element of the plaintiffs' cause of action] is properly addressed at trial or in a ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to certify a proposed class"). Under the rule announced today by the majority, from this point forward, courts in Ohio could ignore the guidance of the United States Supreme Court and might require putative class-action plaintiffs to affirmatively prove liability or causation prior to certification of a class. That is nonsense.

{¶ 49} I do not believe that the trial court abused its discretion in determining that appellees met their burden under Civ.R. 23. This case is similar to *Amgen*, not *Dukes*. In *Amgen*, the putative-class plaintiffs alleged that Amgen, Inc., had made misrepresentations regarding its flagship drugs that caused an artificial inflation of Amgen's stock. *Amgen* at 1195-1196. Amgen argued that for the class claim to predominate over individual claims, the plaintiffs had to prove that the misrepresentation was material. *See Amgen* at 1191, 1195. The court observed that the question of materiality would be an objective one, applicable to the entire class of buyers. *Amgen* at 1196. Therefore, there was no

risk that a failure of proof on the issue would require consideration of individualized questions, rather than questions common to the class, about reliance on the misrepresentation. *Amgen* at 1196. Rather, failure of proof on that element would be a " 'fatal similarity' " that would sink the entire case at a later stage. *Amgen* at 1197, quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 107 (2009).

{¶ 50} In *Dukes*, the court had to wade into the merits in order to determine whether there was a common policy of discrimination used by all of the thousands of supervisors responsible for each of the 1.5 million putative-class members. *Dukes*, ___ at ___, 131 S.Ct. at 2555-2556, 180 L.Ed.2d 374. The court's limited inquiry into the merits clarified that factual questions about discriminatory personnel practices would differ at each Wal-Mart store, and thus it was proper not to certify a class. *Dukes* at 2553-2555. That is the type of case that fails for an inadequate showing of predominance under Civ.R. 23(B)(3).

{¶ 51} Like the plaintiffs in *Amgen*, however, appellants, Ganley Chevrolet, Inc., and Ganley Management Company (collectively, "Ganley"), allegedly used unconscionable arbitration terms in contracts with the putative-class members. The legal issue—whether use of an unconscionable arbitration term is a violation of the OCSPA—is overwhelmingly and obviously common to the class members because every single class member's claim would be won or lost on the answer to that question. Appellees did not fail to show a class for whom common questions of law or fact predominate over any individual questions; every member of the class could lose on the question of damages at the same time. *See Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 429-430, 696 N.E.2d 1001 (1998) ("It is now well established that 'a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'

*Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580").

{¶ 52} This court also granted jurisdiction over Ganley's second proposition of law: "In a class action brought under the Ohio Consumer Sales Practices Act, R.C. 1345.09(B) requires the consumers to have sustained actual damages as a result of the challenged conduct." I can readily agree with this proposition as it correctly states Ohio law. Under R.C. 1345.09(B), plaintiffs may "*recover* damages or other appropriate relief in a class action under Civil Rule 23, as amended." (Emphasis added.)

{¶ 53} The last sentence of R.C. 1345.09(B) has nothing to do with class certification under Civ.R. 23. "Recover" means "to obtain (relief) by judgment or other legal process." *Black's Law Dictionary* 1466 (10th Ed.2014). Recovery is an aspect of the very last event in a lawsuit—the judgment. But under Civ.R. 23(C)(1), class certification is one of the very first events in a lawsuit. It is hard to find any practical or conceptual relationship between R.C. 1345.09(B) and Civ.R. 23, beyond that the former refers to the latter without modifying it. To the extent that this court's past opinions can be read to hold otherwise, it was as wrong then as it is now. *See Marrone v. Phillip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, syllabus.[5] Even in *Marrone*, we were able to carefully distinguish the requirements of the OCSPA from those of Civ.R. 23. *Marrone* at ¶ 8 ("this opinion does not address whether the requirements of Civ.R.

---

[5] In the order that was appealed, the trial court addressed the requirement found in *Marrone* that a defendant must have sufficient notice that its conduct was deceptive and found that the requirement had been met because Ohio Adm.Code 109:4-3-12(B)(22) described the provision used by Ganley as deceptive. The trial court ably resolved a vague point of our holding in *Williams v. Spitzer Autoworld Canton, L.L.C.,* which held that Ohio Adm.Code 109:4-3-12(B)(22) was unconstitutional "[t]o the extent that [the rule] conflicts with the parol evidence rule * * * and allows parol evidence contradicting the final written contract." 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, paragraph one of the syllabus. With no parol-evidence issue presented, and with a number of common pleas court judgments published in the attorney general's public-information file, the trial court did not abuse its discretion by finding that the *Marrone* requirement was met.

23 were met. We address only the narrow issue of whether defendant had sufficient notice for purposes of R.C. 1345.09(B) that its alleged conduct was deceptive"). The majority writes additional language into the Revised Code to state that the OCSPA requires proof of damages as a prerequisite of class certification under Civ.R. 23(B)(3). This is an inquiry that should be resolved at the trial-court level as the case progresses.

{¶ 54} The majority points to less-than-helpful cases to support muddling the class-certification standard under Civ.R. 23(B)(3) with an actual-damages requirement. *See, e.g., Butler v. Sterling, Inc.*, 6th Cir. No. 98-3223, 2000 WL 353502, *3 (Mar. 31, 2000) (class claims were brought under the Truth-in-Lending Act, but the trial court had disposed of the plaintiff's OCSPA claim on summary judgment before denying class certification); *Johnson v. Jos. A. Bank Clothiers, Inc.*, S.D.Ohio No. 2:13-cv-756, 2014 WL 4129576, *2-8 (Aug. 19, 2014) (trial court granted motion to dismiss under Fed.R.Civ.P. 12(B)(6) based on the heightened federal-pleadings standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *In re Rail Freight Fuel Surcharge Antitrust Litigation–MDL No. 1869*, 725 F.3d 244, 254-255 (D.C.Cir.2013) (class certification order vacated and remanded based on new case law regarding statistical modeling and because the district court failed to rigorously analyze the class plaintiffs' means of calculating damages—not because there were no damages in fact); *Konarzewski v. Ganley, Inc.*, 8th Dist. Cuyahoga No. 92623, 2009-Ohio-5827, ¶ 49 (recognizing that a Civ.R. 23(B)(3) inquiry is different than the inquiry under R.C. 1345.09(B)); *Washington v. Spitzer Mgt., Inc.*, 8th Dist. Cuyahoga No. 81612, 2003-Ohio-1735, ¶ 38-53 (making no mention of R.C. 1345.09(B) throughout the predominance inquiry). Only the Tenth District Court of Appeals has amalgamated the requirements of Civ.R. 23(B)(3) and R.C. 1345.09(B) in the same way as the majority in this case does. *Searles v. Germain Ford of Columbus, L.L.C.*, 10th Dist. Franklin No.

08AP-728, 2009-Ohio-1323, ¶ 21-24. We are not bound by this decision, and we should not "put the cart before the horse" by accepting its misguided logic. *Amgen*, ___ U.S. at ___, 133 S.Ct. at 1191, 185 L.Ed.2d 308.

{¶ 55} It is possible that Ganley could have prevailed in this matter by filing a successful motion for dismissal under Civ.R. 12(B)(6), for judgment on the pleadings under Civ.R. 12(C), or for summary judgment under Civ.R. 56. Unlike the foregoing procedures, the inquiries required by Civ.R. 23 should not determine the merits of a claim.

{¶ 56} As a final matter, I do not believe that answering the propositions of law before us would have completely resolved this matter. That is to say, there may have been other good reasons for reversal. Although appellees properly proposed a class, it seems plainly erroneous that the trial court summarily handed out "discretionary damages" immediately upon certifying the class. Ganley asked this court to consider issues surrounding that mistake in their memorandum in support of jurisdiction. I believe it was unwise to accept jurisdiction on the class-action issue without accepting jurisdiction over the entire matter. The majority, which clearly quarrels with an award of damages that should be irrelevant to the issue before the court, now does actual damage to Civ.R. 23 in order to make its point.

{¶ 57} Class certification is, and should remain, an issue distinct from the resolution of the merits. Therefore, I dissent.

_____

Ulmer & Berne, L.L.P., Joseph A. Castrodale, and David D. Yeagley; and A. Steven Dever Co., L.P.A., and A. Steven Dever, for appellants.

Zipkin Whiting Co., L.P.A., and Lewis A. Zipkin; and Law Offices of Mark Schlachet and Mark Schlachet, for appellees.

Shook, Hardy & Bacon, L.L.P., Victor E. Schwartz, and Cary Silverman, pro hac vice, urging reversal for amici curiae American Insurance Association,

American Tort Reform Association, Chamber of Commerce of the United States of America, NFIB Small Business Legal Center, Ohio Alliance for Civil Justice, and Ohio Chamber of Commerce.

Stockamp & Brown, L.L.C., David A. Brown, and Deanna L. Stockamp, urging reversal for amici curiae Greater Cleveland Automobile Dealers Association and Ohio Automobile Dealers Association.

Bricker and Eckler, L.L.P., Drew H. Campbell, Ali I. Haque, and Kara H. Herrnstein, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

_____